```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
                                :
BADEBANA ATCHOLE                :
                                :
    v.                          : Civil Action No. DKC 2003-3464
                                :
SILVER SPRING IMPORTS, INC.,    :
et al.                          :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the joint motion for partial summary judgment (Paper 43) by Defendants Silver Spring Imports, Inc. d/b/a/ Darcars Mitsubishi (SSI) and Mitsubishi Motors Credit of America, Inc. (MMCA) as to counts I, II, and V of Plaintiff's complaint. The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion will be granted as to counts I and II, and denied as to count V.

**I. Background**

The material undisputed facts are as follows. On or about March 27, 2003, Plaintiff, Mr. Badebana Atchole, visited Defendant SSI's Mitsubishi dealership seeking to purchase a new vehicle. Shortly after arriving, he asked to speak with a French-speaking sales representative. Despite being informed that the dealership had no such person on staff, Plaintiff

decided to proceed with his vehicle purchase. Although he initially expressed interest in a sport utility vehicle, the Mitsubishi Montero, Plaintiff ultimately purchased the more economical Diamante sedan.

Plaintiff alleges that as he drove home from the dealership, the vehicle began to pull strongly to the right. Plaintiff's wife and children also allegedly felt the disturbance. Thinking that the movement could be due to a flat tire, Plaintiff pulled over to the side of the road. He found that all four tires appeared to be in working order. Assuming that the dealership would be closed by then, Mr. Atchole decided it was too late to turn back. He decided to drive home slowly and report the problem the next day. He also alleges that he experienced some difficulty getting the car to restart. The next day, Plaintiff slowly drove the vehicle to work without incident. When he attempted to drive home after his shift, the car refused to start. Plaintiff's co-worker then tried to jump start the vehicle using a company van, but was unsuccessful.

After notifying Defendant SSI of the problems he was experiencing, Mr. Atchole was told to contact a towing company and have the car brought back to the dealership. Plaintiff also claims that Defendant SSI's sales representative, after allegedly conferring with his manager, promised to give him a

new Montero Sport as a replacement for the defective Diamante. Consequently, Plaintiff rode with the tow truck to the dealership, was given a car on loan for the weekend, and allegedly was told to return several days later to obtain his replacement vehicle.  Upon his return to the dealership, Plaintiff was told that the Diamante had been repaired and that he would not be given a replacement vehicle free of cost. Plaintiff refused to retake possession of the repaired Diamante, stating that he had lost confidence in the vehicle and did not consider it to be sufficiently reliable for use as a family car.

On December 4, 2003, Plaintiff filed suit alleging that Defendant SSI, through a series of fraudulent acts and misrepresentations surrounding the purchase the automobile, committed violations of the Magnuson-Moss Warranty Act (counts I and II) and Maryland's Consumer Protection Act (counts III and IV), breach of contract (count V) and fraud (count VI).  In count VII of the complaint, Plaintiff alleges that Defendant MMCA , as holder of an Installment Contract ("Contract") entered into between Plaintiff and SSI, is derivatively liable for each of the claims asserted against SSI in counts I through VI, pursuant to a regulation developed by the Federal Trade Commission (FTC) known as the FTC Holder Rule. *See* 16 C.F.R. §

433.2.[1]  On February 3, 2005, Defendants filed the instant motion for summary judgment on the federal Magnuson-Moss Warranty Act claims (counts I and II), and the breach of contract claim (count V).  For the following reasons, the motion will be granted as to counts I and II, but denied as to count V.

## II.  Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v.*

---

[1] On January 22, 2004, MMCA filed a motion to dismiss counts I through VI to the extent that the damages sought by Plaintiff exceeded the amount paid under the Contract.  That same day, MMCA also filed its answer to Plaintiff's complaint and asserted therein a counterclaim against Plaintiff for the deficiency balance it alleged it was owed as holder of the Contract.  On June 1, 2004, this court granted MMCA's motion to dismiss, thereby limiting Plaintiff's claims against MMCA to the amount Plaintiff paid under the Installment Contract ($4,000.00).  *See* Papers 19, 20.

*Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1987).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of South Carolina v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324.  However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary

5

judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**III. Analysis**

   ***A. Magnuson-Moss Breach of Implied Warranty (Count I)***

Defendants first move for partial summary judgment with respect to Count I of the complaint, alleging a violation of the implied warranty provisions of the Magnuson-Moss Warranty Act (MMWA). 15 U.S.C. § 2310 (1998). Defendants contend, and the court agrees, that as a matter of law SSI was not given a reasonable opportunity to remedy any defects present in the vehicle.

Pursuant to § 2310(e) of the MMWA, no action for breach of express or implied warranty may be brought under the act "unless the person obligated under the warranty...is afforded a reasonable opportunity to cure such failure to comply." The question of whether a seller has been granted a sufficient opportunity to remedy a defect is ordinarily one for the finder of fact. *Abele v. Bayliner Marine Corp.*, 11 F.Supp.2d 955, 961

(N.D.Ohio 1997). However, "if the evidence before the court is such that a reasonable jury could not return a verdict for the nonmovant, then summary judgment is appropriate." *Tucker v. Aqua Yacht Harbor Corp.*, 749 F.Supp. 142, 146 (N.D.Miss. 1990) (citing *Anderson*, 477 U.S. at 248), *aff'd*, 953 F.2d 643 (5th Cir. 1992)(table).

A seller's right to cure under the MMWA is not unlimited. A seller "does not have an unlimited time for the performance of the obligation to replace and repair parts." *Orange Motors of Coral Gables, Inc. v. Dade County Dairies, Inc.*, 258 So.2d 319, 320-21 (Fla.Dist.Ct.App. 1972). Furthermore, the buyer is not bound to permit a seller to "tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty." *Id.* However, a number of courts have held that a seller is entitled to at least two opportunities to remedy a nonconforming good under the federal warranty statute. *Abele*, 11 F.Supp.2d at 962; *see also, Tucker*, 749 F.Supp. at 147; *Pratt v. Winnebago Indus., Inc.*, 463 F.Supp. 709, 714 (W.D.Pa. 1979). The phrase "reasonable opportunity to cure" must mean that the seller has a practical opportunity to repair or replace defective parts of a contracted-for product. As noted by the court in *Abele*, "[l]iability has been found only where the product contained numerous, serious defects, and those

7

defects went unrepaired despite repeated attempts by the seller to repair them." 11 F.Supp.2d at 962.

For example, in *Milicevic v. Jones*, 402 F.3d 912 (9th Cir. 2004), a violation of MMWA was found where the car purchased by the plaintiff exhibited a number of aesthetic and mechanical defects from day one, in response to which the automobile was subject to repair in excess of four times and spent a cumulative total of 55 days at the dealer's repair shop in the first several months. In contrast, in *Abele*, 11 F.Supp.2d at 959, the court found that the plaintiff's refusal to test his boat after the defendant replaced the engine for the second time defeated his claim under the MMWA. *See also Tucker*, 749 F.Supp. at 147 (finding that the defendant manufacturer was not given a sufficient opportunity to cure piston defects before buyer filed suit where the defendant had attempted to repair the engine for a second time and timely repairs were ongoing).

Here, it is undisputed that Plaintiff failed to provide Defendants with even a single opportunity to repair the nonconformities present in the automobile. Although Defendant SSI carried out timely repairs and represented to Plaintiff that his vehicle was in working order, Plaintiff refused to retake possession of the car. Paper 43, Ex. 1 at 31-33. Plaintiff did not hire a mechanic to inspect the automobile, nor did he test

8

it himself to determine whether the repairs had been effective. *Id.* at 37. Indeed, Plaintiff admitted that he did not learn the nature or extent of the automobile's defects before attempting to revoke his acceptance, and that he would not have accepted any cure short of replacement of the entire automobile. *Id.* at 31-32.

Contrary to Plaintiff's contention, a seller is not automatically required to provide a replacement product in order to effect an adequate cure. This fact is demonstrated by such cases as *Abele* and *Tucker*, where the plaintiffs were required to permit repair of the yachts they had originally purchased despite significant and undisputed engine damage. Similarly, in *Champion Ford Sales, Inc. v. Levine*, 49 Md.App. 547, 563, 433 A.2d 1218, 1227 (1981), the court relied on the fact that the plaintiffs were willing to accept a factory replacement engine in holding that the plaintiff had afforded the sellers a satisfactory opportunity to cure under the MMWA. Furthermore, the extent of the engine's nonconformities were well documented and severe, giving the court an adequate basis to determine that the only form of cure proposed by the dealer would be clearly inadequate. *Id.* at 556, 433 A.2d at 1224. Here, it is undisputed that Plaintiff had no knowledge of the nature of the supposed defects, that he refused to retake the car after SSI

9

had represented that it had been fully repaired, and that he admitted he would accept no cure short of a replacement vehicle. *See* Paper 43, Ex. 1 at 31-33, 37.

Lastly, Plaintiff alleges that the mechanical difficulties he experienced caused him to lose confidence in the integrity and reliability of the vehicle. However, a buyer's "shaken faith" in a product, standing alone, has not been recognized as an exception to the right to cure in federal case law. 1 Barkley Clark and Christopher Smith, *The Law of Product Warranties* §7:15 (2004). By refusing to inspect or test the vehicle to determine whether the proffered cure was adequate, Plaintiff has failed to demonstrate a triable issue of fact as to whether Defendant SSI was given a sufficient opportunity to cure. As the MMWA explicitly precludes an action from being brought "unless [SSI] is afforded a reasonable opportunity to cure," and it is undisputed that no such opportunity was given, Defendants are entitled to summary judgment with respect to Plaintiff's federal breach of implied warranty claim.

### B.  *Magnuson-Moss Mandatory Warranty Disclosures (Count II)*

Defendants next challenge Plaintiff's ability to present a triable issue of fact as to Count II of the complaint, which alleges a failure to disclose the terms of a written warranty

10

under 15 U.S.C. § 2302.  This section generally requires "any warrantor warranting a consumer product to a consumer by means of a written warranty to fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty."  15 U.S.C. § 2302(a).[2]  Furthermore, the terms of any written warranty on a consumer product "must be made available to the consumer (or prospective consumer) prior to the sale of the product to him."  *Id*. § 2302(b)(1)(A).

Plaintiff contends that Defendant SSI violated this mandated pre-sale availability of warranty terms by selling him an automobile subject to a written warranty, and failing to present its terms and conditions pursuant to the requirements of the MMWA and accompanying FTC regulations.  While Defendants, at this stage, do not contest the Plaintiff's factual allegations in Count II, they argue that he has failed to show any relationship between the failure adequately to disclose warranty terms pursuant to § 2302 and the damages alleged.

It is important to note that, while the statute provides a set of binding requirements governing the contents and disclosure of warranties, § 2302 does not expressly contain an independent private right of action or provision for statutory

---

[2]Pursuant to § 2302(b)(1)(A), the Act's specific disclosure requirements have been promulgated by the Federal Trade Commission in 16 C.F.R. § 702.3.

11

damages. Plaintiff has not cited any case law to support the proposition that a violation of § 2302 or its accompanying regulations should automatically entitle a buyer to exemplary or other damages. Rather, private enforcement of this and all other provisions of the MMWA is governed by § 2310(d), which states in pertinent part that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor *to comply* with *any obligation under this chapter* . . . may bring suit for damages and other legal or equitable relief." Thus, in order to claim monetary relief under this section, Plaintiff is required to show that he has sustained actual damage, proximately caused by Defendant SSI's failure to disclose the terms of the warranty in accordance with the MMWA.

Plaintiff has failed to meet this burden. Plaintiff alleges in his complaint that he was "harmed and suffered damages as a direct and proximate result" of Defendants' violation of § 2302 of the MMWA, and seeks "the full amount of his actual damages, in an amount to be proven at trial, plus interest, costs, attorney fees, and all such further relief as the court deems just and proper" under Count II. Paper 1, ¶ 55. He also asserts in the complaint that the mandated pre-sale disclosure of warranty terms is essential to achieving the objectives of the MMWA, "so consumers can determine whether they are receiving

12

adequate warranty coverage, whether the product is worth its price, and to give consumers a meaningful opportunity to shop for a better warranty." *Id.*, ¶ 53.  Despite these allegations, Plaintiff has failed to present any facts tending to show that he suffered harm as a result of anything other than mechanical malfunctions in the vehicle purchased from SSI.[3]

Plaintiff's response to Defendants' second interrogatory, requesting that he "itemize and show how [he] calculate[d] any damages claimed . . . in this action, whether economic, non-economic, punitive or other," also lacks any reference to any harms caused by the failure to disclose the warranty terms in advance of the sale. Paper 43, Ex. 2 at 5-8.  The harms mentioned, including loss of enjoyment of a new automobile and loss of amounts tendered for the vehicle, among others, are not causally related to the alleged violation of § 2302.  In sum, Plaintiff has put forth no evidence, much less raised a genuine factual dispute, as to an essential element of the claim for damages advanced in Count II.  *See Celotex Corp.*, 477 U.S. at

---

[3]During his deposition, Plaintiff testified to harm stemming from the loss of a job opportunity with the Postal Service, lost wages from missing work as a result of the car's nonconformities, damage to his credit rating, and emotional distress due to his inability to provide his family with the convenience of a reliable automobile. *See* Paper 43, exhibit 1 at 37; Paper 45, exhibit B at 40.

13

323. Therefore, Defendants' motion for summary judgment as to Count II will be granted.[4]

### C. State Law Breach of Contract (Count V)

Finally, Defendants move for summary judgment with respect to Plaintiff's breach of contract claim. Defendants assert that "there are no breaches of contract alleged other than the breach of implied warranties." Paper 43 at 7. This position is contradicted by both Plaintiff's complaint, *see* Paper 1, ¶¶ 71-79, and by his opposition brief, *see* Paper 45 at 10, where he also contends that SSI misrepresented the terms of the contractual agreement and breached the contract by failing to sell the Plaintiff a car that was actually new.

Moreover, although Defendants argue that they are entitled to an opportunity to cure under state law, the law in Maryland on this question is unsettled as explained by the Court of Special Appeals in *Levine*. Under the Uniform Commercial Code (UCC), a seller is expressly granted the right to cure when a buyer rejects goods as nonconforming. Md. Code Ann., Com. Law § 2-508 (2002). However, the UCC does not expressly grant this right when a buyer revokes acceptance pursuant to § 2-608. A

---

[4]Plaintiff states that he has still not received the warranty. If he intends to bring an action seeking to obtain a copy of the warranty, he should amend his complaint to so state.

14

right of cure may reasonably be inferred where a buyer accepts nonconforming goods with the expectation that they will be seasonably cured. Whether a "general right to cure, applicable where a buyer accepts without knowledge of a nonconformity and thus without the expectation that it will be cured, is also to be inferred, has been the subject of considerable dispute and the decisions are in conflict." *Levine*, 49 Md.App. at 552-53, 433 A.2d at 1222. *Compare Werner v. Montana*, 117 N.H. 721, 731, 378 A.2d 1130, 1136 (1977) (seller does not have a right to cure where the buyer revokes acceptance), *with Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 374 A.2d 144 (1976) (court found that the seller has a right to cure, and cited to § 2-508 as authority).

In *Levine*, the Court of Special Appeals found it unnecessary to decide whether to recognize a general right to cure under § 2-608. *Id.* at 553, 433 A.2d at 1222. The court recognized the earlier Court of Appeals decision in *Lynx, Inc. v. Ordnance Products, Inc.*, 273 Md. 1, 15, 327 A.2d 502, 513 (1974), stating in dicta that a buyer cannot revoke his acceptance if, following acceptance, the seller in fact seasonably cured the nonconformity, but concluded that *Lynx* did not fully answer the question. *Levine* has not been overturned, and the issue has not

15

been revisited since.  Although Defendants argue that they are entitled to an opportunity to cure under § 2-508, the instant case is plainly governed by § 2-608(1)(B), and is informed by *Levine*.  In marked contrast to a seasoned buyer rejecting tender of imperfect goods, Plaintiff accepted the vehicle without knowledge of its defects, due to the "practical impossibility" of discovering them before taking possession.  *Levine*, 49 Md.App. at 552, 433 A.2d at 1221. Plaintiff's revocation of acceptance was also timely in that it took place within one week of purchasing the vehicle.  Paper 45 at 3.

At this juncture, Maryland law is not sufficiently defined on this point to allow this court to find as a matter of law that the Defendants are entitled to an opportunity to cure under § 2-608.  As the proceedings develop, should it become necessary to decide the issue, this court will consider certifying the question to the Court of Appeals of Maryland.  *See* Md. Code Ann., Cts. & Jud. Proc., § 12-603 (permitting the Maryland Court of Appeals to answer a question of law certified to it by a court of the United States).   Defendants also contend that Plaintiff cannot claim damages resulting from any potential breach, because he failed to retake possession of the vehicle. Paper 45 at 7.  This argument is circular, however, as it rests upon the presumption that Defendants were entitled to an

16

opportunity to cure. Accordingly, Defendants' motion for summary judgment as to Count V of the complaint is denied.

## IV. Conclusion

For the foregoing reasons, the motion for partial summary judgment will be granted as to Counts I and II, and denied as to Count V. A separate Order will follow.

                                      _____/s/_____
                                      DEBORAH K. CHASANOW
                                      United States District Judge

July 27, 2005